AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 22-mj- 29 |
| INFORMATION ASSOCIATED WITH GOOGLE, LLC ACCOUNT ryleighclairek.29@gmail.com and ryleigh.claire.official@gmail.com STORED AT PREMISES CONTROLLED BY GOOGLE, LLC | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT "A"

located in the _____Middle_____ District of _____Louisiana_____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251(a) | Production of Child Pornography |
| 18 U.S.C. § 2252A(a)(2) | Distribution of Child Pornography |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Stephanie Bobo, FBI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date: _____April 1, 2022_____

_____
*Judge's signature*

City and state: _____Baton Rouge, Louisiana_____          Richard L. Bourgeois, Jr., U.S. Magistrate Judge
_____
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH GOOGLE, LLC ACCOUNT ryleighclairek.29@gmail.com and ryleigh.claire.official@gmail.com STORED AT PREMISES CONTROLLED BY GOOGLE, LLC** | Case No. 22-mj-29 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ <br><br> **Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Stephanie Bobo, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with Google Drive accounts ryleighclairek.29@gmail.com and ryleigh.claire.official@gmail.com, (hereinafter, **"SUBJECT ACCOUNTS"**), that is stored at premises owned, maintained, controlled, or operated by Google, Inc. (hereinafter, "Google"), a provider headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the

information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent of the Federal Bureau of Investigation ("FBI"), United States Department of Justice, and have been employed as such since September 2017.  I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code.

3.      Throughout my law enforcement career, I have participated in investigations of bank fraud, health care fraud, bankruptcy fraud, public corruption, intellectual property rights, crimes against children, child exploitation, child pornography, and human trafficking.  I am familiar with, and have employed, the investigative techniques used in these investigations, such as the use of cooperating witnesses, confidential informants, interviews, analysis of bank records, consensual recordings, search and seizure warrants, and Title III court authorized wire interceptions.

4.      As an agent, I am authorized to seek and execute arrest, search, and seizure warrants.  I am currently assigned to the Violent Crime Squad in the Baton Rouge Resident Agency, where I investigate matters involving the online exploitation of children, particularly in relation to violations of Title 18, United States Code (U.S.C.), Sections 2251, 2252 and 2252A and 2422(b), which criminalize, among other things, the production, possession, receipt, and distribution of child pornography as well as the online enticement of a minor.

5.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from others, including but not limited to civilian

2

witnesses and experts. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.       Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 2251, 2252 and 2252A and 2422(b), which criminalize, among other things, the production, possession, receipt, and distribution of child pornography as well as the online enticement of a minor, as well as the conspiracy to violate these sections, pursuant to Title 18, United States Code, Section 2251(e) (collectively, the **"TARGET OFFENSES"**), have been committed by **Hannah KINCHEN ("KINCHEN")**, **Grant DURTSCHI ("DURTSCHI")**, and others known and unknown to law enforcement. There is also probable cause to search the places described in **Attachment A** for evidence, instrumentalities, and/or fruits of these crimes further described in **Attachment B**.

## LAW AND DEFINITIONS

7.       Title 18, United States Code, Section 2251(a) prohibits a person from employing, using, persuading, inducing, enticing, or coercing any minor to engage in, or transporting any minor in or affecting interstate or foreign commerce, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, if such person knows or has reason to know that such visual depiction will be transported or transmitted in or affecting interstate or foreign commerce.

8.       Title 18, United States Code, Section 2252A(a)(2) prohibits a person from knowingly distributing any visual depiction of a minor engaging in sexually explicit conduct

3

that has been mailed, or shipped or transported using any means or facility of interstate commerce, or in or affecting interstate commerce by any means, including by computer.

9.    "Child pornography," or "child sexual abuse material" ("CSAM") means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where-- (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

10.    "Visual depiction" includes undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

11.    "Sexually explicit conduct," as defined in 18 U.S.C. §2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. Whether a visual depiction constitutes such a lascivious exhibition requires a consideration of the overall content of the material, including whether the focal point of the

4

visual depiction is on the child's genitalia or pubic area; whether the setting of the depiction is sexually suggestive, that is, in a place or pose associated with sexual activity; whether the child is depicted in an unnatural pose or in inappropriate attire, considering the age of the child; whether the child is fully or partially nude; whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; or whether the depiction is designed to elicit a sexual response in the viewer.

12.    The "Internet" is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

13.    "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet.  IP addresses can be dynamic, meaning that the Internet Service Provider (hereinafter "ISP") assigns a unique and different number to a computer every time it accesses the Internet.  IP addresses might also be static, if an ISP assigns a user's computer a particular IP address, which is used each time the computer accesses the Internet.

14.    "Log Files" are records automatically produced by computer programs to document electronic events that occur on computers.  Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors. Logs are often named based on the types of information they contain. For example, web logs contain specific information about when a website was accessed by remote computers; access

5

logs list specific information about when a website was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

15.    "Cloud storage" is an online storage medium, which allows users to access their files from anywhere using a device connected to the Internet.

## FACTS SUPPORTING PROBABLE CAUSE

16.    Based on my training and experience, and the facts set forth in this affidavit, there is probable cause to believe that **KINCHEN**, **DURTSCHI**, and others known and unknown, conspired to commit the TARGET OFFENSES, and the evidence, fruits, and instrumentalities of these crimes will be found on the **SUBJECT ACCOUNTS**.

17.    This investigation stemmed from a complaint received from **KINCHEN**'s husband, identified herein as "B.K.," regarding sexually explicit photos being taken of his minor-stepdaughter by **DURTSCHI**.  Specifically, on August 2, 2021, B.K. called the FBI National Threat Operations Center to report that **KINCHEN** was producing child sexual abuse material ("CSAM") of her biological daughter and his stepdaughter, R.K. (hereinafter, "**VICTIM-1**").  Specifically, B.K. reported that **KINCHEN** allowed **DURTSCHI** to take sexually explicit photographs of **VICTIM-1**.

18.    **VICTIM-1** (D.O.B. xx/xx/2008) is a thirteen (13) year old female who resides with **KINCHEN** at their home in Gonzales, Louisiana, located in the Middle District of Louisiana**.**

6

19.    On August 11, 2021, FBI Agents interviewed B.K. at the FBI Baton Rouge Resident Agency. B.K. stated that on or about February or March 2020, **VICTIM-1** began working with an acting/modeling agency after expressing an interest in acting/modeling.

20.    **KINCHEN** began posting pictures of **VICTIM-1** on Instagram to help VICTIM-1's modeling career. **KINCHEN** posted the pictures on **VICTIM-1's** Instagram account.

21.    According to B.K., it was around this time that **KINCHEN** was contacted by J.L., the mother of another minor-model who resides in Prairieville, Louisiana, in the Middle District. J.L. introduced **KINCHEN** and **VICTIM-1** to **DURTSCHI.**

22.    **KINCHEN** brought **VICTIM-1** to different states to do photoshoots with **DURTSCHI**, including Texas, Louisiana, and Florida. Other minor-models were also present for some of the photoshoots with **VICTIM-1.**

23.    B.K. informed agents that in the Spring of 2021, **KINCHEN** and another mother, P.G., sued **DURTSCHI** for selling photographs of their daughters without their consent.  P.G. is the mother of B.S. (hereinafter, "**VICTIM-2**"), a fourteen (14) year old female who resides in Polson, Montana.

24.    On or about August 2021, B.K. began talking with **DURTSCHI** over the application Telegram. Based on my training and experience, Telegram is a free, cross-platform, cloud-based instant messaging (IM) system available for desktop and mobile platforms. The service also provides end-to-end encrypted video calling, VoIP, file sharing and several other features. The servers of Telegram are distributed worldwide but its

7

operational center is based in Dubai in the United Arab Emirates. Various client apps are available for desktop and mobile platforms.  Telegram provides end-to-end encrypted voice and video calls and optional end-to-end encrypted "secret" chats.

25.    In their conversations on Telegram, **DURTSCHI** told B.K. about men who called themselves "sponsors" and who gave money to minor females to help fund their modeling careers.   In exchange for their money, these "sponsors" could request photographs of the minor females from the photoshoots.  In some instances, the sponsor could pay to attend the photoshoots with the minor females.  **DURTSCHI** told B.K. that the "sponsors" paid the minors through the peer-to-peer payment applications Venmo or CashApp.

26.    B.K. also noted that **DURTSCHI** told **KINCHEN** that he did not take nude photographs of any minor females.  However, **DURTSCHI** admitted that he was aware his photographs were purchased by "pedos." **DURTSCHI** told **KINCHEN** multiple times that the main buyers of these photographs were pedophiles. **DURTSCHI** said that "megalinks" were the most common way he distributed the photographs of the minors from the photoshoots.

27.    Based on my training and experience, Mega is a cloud storage and file hosting service maintained by Mega Limited based in Auckland, New Zealand.  The service is offered through web browsers and web-based apps for Android, iPhone, and Windows and can be accessed from traditional computers along with smart phones and tablets.  Users can sign up for free and are provided at least 15GB of cloud storage to save files.  Mega stores these files using end-to-end encryption which prevents anyone, including Mega itself, from accessing or viewing the files or folders without the encryption key.  Files or folders can then be shared

with other individuals by creating a link to the file or folder.  The link will contain the encryption key needed to decrypt the file or folder.

28.    After the initial complaint from B.K., I learned of another complaint regarding **VICTIM-1** made to the Louisiana Bureau of Investigation ("LBI").  I obtained the full set of photos taken by **DURTSCHI** of **VICTIM-1** that were received by LBI.  The photographs consisted of a series of **VICTIM-1** in various poses in a G-string bikini on a bed. There were 80 images. Many of the images included **VICTIM-1** with her legs spread apart while lying on the bed. Approximately two of the images were **VICTIM-1** on all fours crawling on the bed. Approximately three of the images were **VICTIM-1** positioned with her head on a pillow and her buttocks raised in the air. In one of the images, the focal point was on **VICTIM-1's** genitals

while she was posed in a sexual position on the bed. **VICTIM-1**'s genitals were barely covered by a G-string bikini.

### Interview of KINCHEN

29.     Based on the information provided by B.K, I, along with another FBI Agent, interviewed **KINCHEN** at her residence on August 18, 2021.

30.     **KINCHEN** said that she and another mother, P.G., filed a civil lawsuit against **DURTSCHI** after learning that **DURTSCHI** sold pictures of **VICTIM-1** and **VICTIM-2** without their knowledge or consent.

31.     **KINCHEN** also said that **DURTSCHI** traveled to Louisiana to conduct photoshoots of **VICTIM-1**, including visits to New Orleans on one occasion, and to Baton Rouge on two occasions.

32.     **KINCHEN** stated that **DURTSCHI** shared his photographs of **VICTIM-1** with her using Google Drive.

10

33.     **DURTSCHI** created a second Google account for **VICTIM-1** because he believed there was not enough storage space on **VICTIM-1's** account, Ryleighclairek.29@gmail.com.    The    second    account    created    was Ryleigh.claire.official@gmail.com, collectively **SUBJECT ACCOUNTS**. **DURTSCHI** provided **KINCHEN** with the login information for the second Google account.    When **KINCHEN** logged into the account, she saw emails indicating that **DURTSCHI** was selling **VICTIM-1's** photographs and videos, along with other items, such as panties worn by **VICTIM-1**, to multiple different men.    **KINCHEN** identified at least 20 different men to whom **DURTSCHI** sold **VICTIM-1's** photographs, videos and other items.    **DURTSCHI** also posted photographs of **VICTIM-1** through his Instagram accounts, @timelssintx and @timelessintx2 (collectively, "Instagram accounts").

34.     **DURTSCHI** asked to take nude photographs of **VICTIM-1**. Additionally, **KINCHEN** was aware **DURTSCHI** told **VICTIM-2** he would rather see her naked out of all the girls he photographed.

35.     In approximately July 2020, **DURTSCHI** asked to take nude photographs of **VICTIM-1. DURTSCHI** became persistent in asking to take nude photographs of **VICTIM-1.**

36.     **VICTIM-1** was last photographed by **DURTSCHI** in October 2020 in Plano, Texas. **KINCHEN** said that during this shoot, **VICTIM-1** was uncomfortable with how **DURTSCHI** was touching her. **DURTSCHI** started to get "handsy" during the shoot.

37.     **KINCHEN** said that individuals wanting to buy **VICTIM-1's** photographs contacted **DURTSCHI. DURTSCHI** then sent the requests to **KINCHEN**, who would choose the photos that would be distributed to those purchasing **VICTIM-1's** photographs.

38.     **KINCHEN** said that **DURTSCHI** sold photographs publicly to "whoever he wanted." **DURTSCHI** sold the photographs through the website www.timelessintx.com. **KINCHEN** reported the website, and it was ultimately shut down.   In addition, **KINCHEN** reported the Instagram account @timelessintx, which was also shut down.

39.     After a photoshoot, **DURTSCHI** gave **VICTIM-1** cash or sent her money through Venmo. **DURTSCHI** told **KINCHEN** that he wanted **VICTIM-1** to "feel good about the shoot." **DURTSCHI** gave **VICTIM-1** approximately $1,000 after one of the photoshoots in Baton Rouge.  In total, **KINCHEN** estimated **DURTSCHI** had given **VICTIM-1** a few thousand dollars.

40.     Recently, a lot of men contacted **KINCHEN** through Instagram to buy photos of **VICTIM-1**. The men offered to buy **VICTIM-1's** photos from **KINCHEN** because **DURTSCHI** was no longer selling her photos.

12

41.    **KINCHEN** consented to the search of her phone and a forensic extraction was made of the device. **KINCHEN** also provided agents with a copy of evidence stored in a folder on her computer that was entitled "Evidence against Grant."

### Interview of VICTIM-1

42.    On September 28, 2021, agents conducted a child forensic interview with **VICTIM-1.**

43.    **VICTIM-1** stated that she was last photographed by **DURTSCHI** in October 2020.   The photoshoot took place near Dallas, Texas, at an AirBNB rented by **DURTSCHI. VICTIM-1**, her mother, and **DURTSCHI** stayed at the AirBNB together. **DURTSCHI** stayed in one room, while **VICTIM-1** and her mother stayed in another room.

44.    **VICTIM-1** said that she got upset with **DURTSCHI** during the photoshoot because he "touched her butt". She said that **DURTSCHI** moved her to position her for a photo and touched her butt in the process. It made her feel uncomfortable. **DURTSCHI** also untied the string on the bottoms of her swimsuit. **VICTIM-1** caught the suit and tied it back.

45.    **DURTSCHI** asked **VICTIM-1** to take nude photographs. **DURTSCHI** said it was artistic. **VICTIM-1** was not comfortable taking nude photographs.

### Use of Electronic Devices to Facilitate Production and Distribution of CSAM

46.    Based on the information received from **KINCHEN, VICTIM-1,** other witnesses and minor victims, there is probable cause to believe that **KINCHEN** and **DURTSCHI** enticed **VICTIM-1** to take sexually explicit photographs and then sold these photographs to pedophiles for profit.

47.     Agents reviewed the evidence obtained from the forensic analysis of **KINCHEN's** phone. The phone contained communications between **KINCHEN, DURTSCHI,** and others via the messaging application Telegram.

48.     In those conversations, **DURTSCHI** admitted to **KINCHEN** that he was a pedophile. **DURTSCHI** stated that his family knew he was a pedophile, and 99% of the people in this industry [teen modeling] were pedophiles.

49.     On August 23, 2020, **KINCHEN** and an individual, believed to be **DURTSCHI**, discussed ideas for photoshoots and a website for **VICTIM-1.**   During that exchange, **KINCHEN** sent a photo that she took of **VICTIM-1** with the comment, "she is finally using her lil butt some lol." **DURTSCHI** asked **KINCHEN** about developing a website because he had "quite a few thirsty dudes."   **KINCHEN** told **DURTSCHI** that she would organize the photos of **VICTIM-1** into folders.



> **Deleted Account**                                                   21:02
> Any direction on website yet? Quite a few thirsty dudes. Lol. That's a good sign
>
> **Hannah Kinchen**                                                    21:09
> We need a web designer bad. What do we do in the meantime?
>
> **Deleted Account**                                                   21:15
> We can trial run Telegram to see the interest and start collecting funds. Or just organize the photos so it's all set when it's time. I'd do as many normal as it seems safe to do. No need to have pics never used and many see quantity as at least something desirable.
>
> **Hannah Kinchen**                                                    21:18
> I can spend this week getting pictures in folders for a trial run. Any that need editing, like her under arms, I'll put in a folder for you and then we can go from there.

50.    **KINCHEN** further told **DURTSCHI** that she had 50 sets of photos "between what you and I have shot so far."

> **Hannah Kinchen**                                                    21:55
> I have about 50 sets of different outfits between what you and I have shot so far
>
> I don't know if that good or not. She's only been shooting for                 21:57
> almost 3 months now. That's not counting customs of course

51.    **DURTSCHI** and **KINCHEN** also discussed the production "custom" photo sets for potential buyers.

15

**Deleted Account**                                          22:23
And I have stuff too probably. If it's "customs" what we saw with▮▮▮▮
was post safe angles for website but then they all know it's a thong and
come begging for customs.

**Hannah Kinchen**                                          22:24
She said she's still up for customs. Just not like the blue one.

I can get her to do one more similar though for Tommy      22:24

52.     FBI Analysts conducted an analysis of **KINCHEN** and **DURTSCHI's** peer-to-peer financial transaction accounts, including PayPal, Venmo, and CashApp.

53.     Records of **DURTSCHI's** financial accounts indicated that **DURTSCHI** received numerous payments, mostly from men.   The comments associated with the payments sometimes included references to the Instagram accounts as well as the name of **VICTIM-1**, as seen in the snapshot below taken from one of his PayPal activity logs:

| Date | Description | Amount | Notes |
|---|---|---|---|
| 09-May-21 | Betaling til TimelessinTX for | ($1,082.34 USD | |
| 08-May-21 | Betaling til TimelessinTX for | ($996.60 USD | |
| 07-May-21 | | $906.60 USD | |
| 07-May-21 | | $897.40 USD | |
| 06-May-21 | Payment to TimelessinTX for invoice | $776.33 USD | |
| 06-May-21 | | $655.26 USD | |
| 06-May-21 | | $533.17 USD | And ▮VICTIM-1▮ Sport Boutine |
| 06-May-21 | | $450.00 USD | For ▮VICTIM-1▮ black boutine and ▮VICTIM-1▮ G String |
| 05-May-21 | | $225.00 USD | |
| 04-May-21 | | $221.07 USD | |
| 04-May-21 | | $125.00 USD | |
| 03-May-21 | | $671.07 USD | ▮VICTIM-2▮ blue micro and white |
| 03-May-21 | | $425.00 USD | |
| 02-May-21 | | $300.00 USD | |
| 01-May-21 | | $680.61 USD | |
| 01-May-21 | | $559.54 USD | |
| 01-May-21 | | $441.37 USD | Media consultation |
| 01-May-21 | | $221.07 USD | for ▮VICTIM-1▮ Black Routine |
| 30-Apr-21 | | $125.00 USD | From D▮▮▮ @protonmail. com |
| 29-Apr-21 | | $257.00 USD | |
| 26-Apr-21 | | $586.04 USD | |
| 25-Apr-21 | | $364.97 USD | |
| 25-Apr-21 | | $245.77 USD | |
| 25-Apr-21 | | $121.22 USD | |
| 25-Apr-21 | | $120.00 USD | |
| 24-Apr-21 | | $663.22 USD | |
| 24-Apr-21 | | $367.14 USD | ▮VICTIM-2▮ micro g string set. |
| 24-Apr-21 | | $246.07 USD | ▮VICTIM-2▮ blue Micro |
| 24-Apr-21 | | $125.00 USD | For ▮VICTIM▮ g-string set |
| 21-Apr-21 | | $365.00 USD | From J▮▮▮ @live. se Privat set g string |

54.    Over 70 men issuing payments to **DURTSCHI** were identified based on the information available.   Of those 70 men, several of the men were convicted sex offenders or had other related convictions in their criminal history.

55.    According to law enforcement records, one individual who paid **DURTSCHI** was previously arrested for Aggravated Sexual Assault of a Child; another individual had an arrest for procuring alcohol for a minor and contributing to the delinquency of a child; two were registered sex offenders, one of which had a prior arrest for child exploitation and possession of child pornography; and finally, one individual had been previously arrested for Kidnapping; Rape Felony/Force/Threat.

56.    Similarly, records of **KINCHEN**'s financial accounts indicated that she was receiving money from **DURTSCHI** along with other identified men who were buying sets

from **DURTSCHI.** One of the comment lines in the transactions included "What are you selling? Snap; EVRCLR666."

## Interview of DURTSCHI

57.     On March 7, 2022, a federal search warrant was executed at **DURTSCHI**'s residence, located in Denton County, Texas.

58.     On the same day, I interviewed **DURTSCHI** who admitted to taking the photographs of **VICTIM-1** on the bed in the G-string bikini with a close up of her anus and vagina. **DURTSCHI** and **KINCHEN** instructed **VICTIM-1** to pose in this position. Those pictures were taken during June or July 2020.

59.     **DURTSCHI** said he took more pictures of **VICTIM-1** in the same pose during their photoshoot in October 2020. He said that he did that pose while **VICTIM-1** was wearing five separate bathing suits. **DURTSCHI** and **KINCHEN** instructed **VICTIM-1** to pose in this position.

60.     **DURTSCHI** gave **KINCHEN** all of the photographs from that photoshoot in October 2020.

## Use of Google Drive to Facilitate Distribution of CSAM

61.     Based on evidence reviewed from **KINCHEN's** phone, I noted numerous instances where **KINCHEN** discussed downloading and uploading photographs of **VICTIM-1** to her computer and/or hard drives.

18

62.     For example, in one conversation, dated August 17, 2020, **KINCHEN** told an individual, who is believed to be **DURTSCHI,** that she downloaded all of the photos shared by **DURTSCHI** from the **SUBJECT ACCOUNTS** account to her computer.

| | Deleted Account | 20:11 |
|---|---|---|
| | The first night suit is up. I had to delete two outfits from the first shoot. Hopefully you downloaded them before. | |

| | Hannah Kinchen | 20:38 |
|---|---|---|
| HK | I did. I've downloaded everything except for what you just shot. | |

| | Deleted Account | 20:54 |
|---|---|---|
| | Some guy was asking for heels. Lol. Now he has them | |

| | Hannah Kinchen | 20:55 |
|---|---|---|
| HK | Probably the same guy the keeps saying we need full length body pictures lol | |
| | Its hard to fit a full length picture into a square  | 20:55 |

63.     In another conversation, **DURTSCHI** discussed sharing photos, and **KINCHEN** confirmed she downloaded the photos.

| | Deleted Account | 20:03 |
|---|---|---|
| | Are there any other post type pics you don't have? I shared some. But might have had more. I usually download things so the drive can be emptied for the next batch. | |

| | Hannah Kinchen | 20:08 |
|---|---|---|
| HK | I went through my computer. It looks like I have everything downloaded now. | |

64.     On March 11, 2022, agents executed a search warrant at **KINCHEN'**s residence, located in the Middle District.    While I was at the residence, I interviewed **KINCHEN** who told me which devices belonged to her, including her laptop.  Upon forensic analysis, I observed **KINCHEN's** laptop which contained the pictures and information she had regarding **DURTSCHI**.

65.     Records    obtained    from    Google    indicated    that    the    Google    account ryleighclairek.29@gmail.com  was created on July 12, 2019 and registered in the name of **VICTIM-1.**  The Google account ryleigh.claire.official@gmail.com was created on July 26, 2020, but there was no subscriber name associated with the account.

## **BACKGROUND CONCERNING GOOGLE AND GOOGLE DRIVE**

66.     Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity  applications,  which  can  be  accessed  through  a  web  browser  or  mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

67.     The **SUBJECT ACCOUNTS** are internet accounts hosted by Google.   In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones,

tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

68.    Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.  When individuals register with Google for a Google Account, Google also asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.  Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

69.    Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services.

70.    For example, Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the

21

account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

71.    Google also maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

### Google Drive

72.    Google Drive is a file storage and synchronization service developed by Google. Google Drive allows users to store files in the cloud, synchronize files across devices, and share files.  In addition to a website, Google Drive offers applications (apps) with offline capabilities for Windows and macOS computers, and Android and iOS smartphones and tablets. Google Drive encompasses Google Docs, Sheets, and Slides, an office suite that permits collaborative editing of documents, spreadsheets, presentations, drawings, forms, and more.  Files created and edited through the office suite are saved in Google Drive.  Users can upload files up to five terabytes in size.  Users can change privacy settings for individual files

and folders, enabling sharing with other users or making content public.  The website and Android app offer a Backups section to see what Android devices have data backed up to the service.

73.     Google subscribers can store emails, files, photos, and videos on Google+ or Google Drive.  Doing so allows subscribers to access their data from any Internet-capable device, and enables them to store data remotely, rather than on their computers or personal electronic devices.

74.     As explained herein, information stored in connection with a Google account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, the information stored in connection with a Google account can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, email communications, chat communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time.  Further, information maintained by Google can show how and when the account was accessed or used.  For example, as described below, providers typically log the IP addresses from which users access the account, along with the time and date of that access.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating

23

to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the account owner's state of mind as it relates to the offense under investigation. For example, information in the account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

75.    Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Google services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

76.    Based upon the above information, I believe that **KINCHEN** and **DURTSCHI** have violated Title 18, United States Code, Sections 2251, 2252 and 2252A and 2422(b), which criminalize, among other things, the production, possession, receipt, and distribution of child pornography as well as the online enticement of a minor), as well as conspiracy to violate these sections, pursuant to 18 U.S.C. Section 2251(e), and that there is probable cause to believe that evidence of those crimes, more particularly described in Attachment B, exists in the    Google    Drive    accounts    associated    with    Google    email    addresses

24

ryleighclairek.29@gmail.com and Ryleigh.claire.official@gmail.com, stored at premises owned, maintained, controlled, or operated by Google.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

77.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Google, Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate and seize only the items described in Section II of Attachment B.

78.     The government will retain a complete copy of the information received from Google for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

79.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

80.     Additionally, to ensure compliance with 18 U.S.C. 2252A, Google does not mail, transport or deliver by computer child pornography to any person other than as permitted as part of making a report to the National Center for Missing and Exploited Children pursuant

to 18 U.S.C. 2258.   Accordingly, absent permission by the Court, Google will not transmit information responsive to this warrant should it contain, as is anticipated, child pornography. The Court has the authority to order Google to disclose responsive data to the Court's search warrant by sending it to the Government using the U.S. Postal Service or another courier service, notwithstanding 18 U.S.C. § 2252A, or similar statute or code.   Google routinely complies with such orders, which do not place any unreasonable burden on Google. Accordingly, Attachment B allows for Google to comply with the warrant by sending results to your affiant by U.S. Mail or other courier.

81.    Based on the foregoing, there is probable cause to believe that federal criminal statutes cited herein have been violated, and that fruits, evidence, and instrumentalities of these offenses are located at the residence listed in **Attachment A**.

82.    Therefore, I respectfully request a search warrant be issued by this Court authorizing the search and seizure of the items listed in **Attachment B**.

83.    Your Affiant is aware that the recovery of data by a computer forensic analyst takes significant time, much the way recovery of narcotics must later be forensically evaluated in a lab, digital evidence will also undergo a similar process.   For this reason, the "return" inventory will contain a list of only the tangible items recovered.   Unless otherwise ordered by the Court, the return will not include evidence later examined by a forensic analyst.

84.    This warrant authorizes a review of electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.   The review of this electronic data may be conducted by any

government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## REQUEST FOR SEALING

85.    It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant.  I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time.  Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

Stephanie Bobo
Special Agent
Federal Bureau of Investigation

**Affidavit submitted by email/.pdf and attested to me as true and accurate by telephone consistent with Federal Rules of Criminal Procedure 4.1 and 41(d)(3) on** April 1, 2022      .

HONORABLE RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF LOUISIANA

## **ATTACHMENT A**

This warrant applies to information located in the Google Drive accounts associated with the email addresses ryleighclairek.29@gmail.com and ryleigh.claire.official@gmail.com, ("SUBJECT ACCOUNTS") that is stored at the premises owned, maintained, controlled, or operated by Google Inc. ("Google"), a company headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043.

28

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be disclosed by Google, Inc. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any emails, records, files, chats, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information, from March 1, 2020 to December 31, 2020, for each account listed in Attachment A:

a.    All business records and subscriber information, in any form kept, pertaining to  the Account, including:

1.    Names (including subscriber names, user names, and screen names);

2.    Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

3.    Telephone numbers, including SMS recovery and alternate sign-in numbers;

4.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

5.    Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers;

6.    Length of service (including start date and creation IP) and types of service utilized;

      7.      Means and source of payment (including any credit card or bank account number);

      8.      Methods of connection to the account; and

      9.      Change history.

b.  The types of service(s) utilized by the Account(s);

c.  All device information associated with the Account(s), including but not limited to, manufacturer names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

d.  Records of user activity for each Google Drive connection made to or from the Account(s), including, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs;

e.  All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures and files;

f.  All records pertaining to communications between the Provider and any person regarding the accounts, including contacts with support services and records of actions taken; and

g.  All information contained in the associated Google Pay account including transactions, purchases, money transfers, payment methods, including the full credit card number and/or bank account numbers used for the transactions.

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violation of Title 18, United States Code, Sections 2251, 2252 and 2252A and 2422(b), as well as Title 18, United States Code, Section 2251(e), conspiracy to violate these sections, including, for the accounts listed on Attachment A, information pertaining to the following matters:

a.      The solicitation and coordination of activities associated with advertising, production, and/or distribution of child pornography;

b.      Connection logs and records of user activity;

c.      Records related to the account, including correspondence, billing records, and any other subscriber information;

d.      Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

e.      The identity of the person(s) who communicated with the account about matters relating to the production, distribution, possession, and receipt of child pornography, including records that help reveal their whereabouts;

f.      Any and all image and video files depicting any minor engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2);

g.      Any and all correspondence, chats, or other writings or documentation relating to the creation or production of sexually explicit images or videos of any minor, and the transportation, distribution, receipt, possession, and access with intent to view said depictions;

h.      Evidence indicating the account user(s) or owner's state of mind as it relates to the crimes under investigation;

i.      Credit card and other financial information including, but not limited to, bills and payment information; and

j.      Evidence of the dates and times the account was used.

3